IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NATALIE LONG, Individually, as Heir at
Law, and as Special Administrator of the
Estate of CHARLES RHOTEN, JR., a
Deceased Minor, and as Parent and Natural
Guardian of JENNIFER RHOTEN, a Minor,

        Plaintiff,

        vs.                          Case No. 05-1272-JTM

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,

        Defendant.

AMENDED MEMORANDUM AND ORDER

      This is an action to collect uninsured motorist benefits arising from a traffic accident in

Wichita, Kansas.  The action was removed here by the defendants St. Paul Fire & Marine Insurance

Company.  The matter is before the court on the motion to remand by the plaintiff, and by the

plaintiff's motion for summary judgment.

      Summary judgment is proper where the pleadings, depositions, answers to interrogatories,

and admissions on file, together with affidavits, if any, show there is no genuine issue as to any

material fact, and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P.

56(c).  In considering a motion for summary judgment, the court must examine all evidence in a light

most favorable to the opposing party.  *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir.

1988).  The party moving for summary judgment must demonstrate its entitlement to summary

judgment beyond a reasonable doubt.  *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.

1985).  The moving party need not disprove plaintiff's claim; it need only establish that the factual

allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

The court has carefully reviewed the extensive pleading submitted by both sides and is prepared to rule. A motion for reconsideration is neither encouraged or required. Any such motion shall not repeat any argument previously made in the existing pleadings, and shall not exceed not exceed five double-spaced pages in length.

**Findings of Fact**

On September 5, 2004, C. J. Rhoten was 14 years old; his sister Jennifer Rhoten was 15 years old. Both were traveling as passengers in a pick-up truck driven by Jack T. Nowak, a minor. The truck left the road and overturned at approximately 1:50 p.m., while traveling south on 231st Street West in Sedgwick County, Kansas. The Rhotens were both ejected from the truck; C. J. Rhoten died as a result of injuries he sustained in the accident.

2

It is uncontroverted that the driver Jack T. Nowak negligently operated the truck, causing severe injuries and death to C. J. Rhoten and severe injuries to Jennifer Rhoten. Defendant contends that factual issues remain, however, as to whether the Rhoetens were also negligent.

The defendant, St. Paul, insured the pick-up truck.  Nowak Construction Company is the policy holder.

On September 30, 2004, St. Paul wrote to Jack Nowak in care of his parents, Joe and Yolanda Nowak, stating that the company denied direct liability coverage because its investigation revealed that Jack Nowak was not a permissive user of the vehicle at the time of the accident.

On January 24, 2005, counsel for plaintiff sent a demand letter to the defendant. The letter was also sent to the attorneys for Jack Nowak and Nowak Construction.  Counsel for Nowak construction responded on February 28, 2005.  Counsel for Jack Nowak responded on March 1, and advanced arguments why uninsured motorist coverage should be available to the plaintiffs under the terms of the St. Paul policy of insurance.  On March 10, 2005, counsel for the plaintiff forwarded these letters to St. Paul, along with a letter specifically demanding settlement under the uninsured motorist coverage provisions of the policy.  Due to a clerical error, this letter sought a response to the demand by May 28, 2005, instead of an intended deadline date of March 28, 2005.  Plaintiff's attorney corrected this oversight by letter dated March 22, 2005.

The defendant did not seek any extension of the provided deadline of March 28, 2005, within which to respond to the uninsured motorist settlement demand. On March 28, 2005, and in conformance with the plaintiff's deadline, the defendant sent a letter to plaintiff's attorney denying coverage under the uninsured motorist provisions of the policy.

The denial letter, Exhibit 11, states:

> I have reviewed your claim for UM benefits arising out of the insurance policy held by Nowak Construction, and have determined that no coverage is available for that claim in these circumstances.
>
> Our policy form, a standard St. Paul Fire and Marine insurance Company form W029 (3-01 edition) contains the following "grant of coverage" language:

> *"We'll pay all sums any protected person is legally entitled to recover from the owner or driver of an uninsured or underinsured vehicle..."*

We have previously denied coverage responsibility for any claims against the liability of the driver of the vehicle at issue, because that person was not a permitted driver of that vehicle, and so his use of the vehicle was outside of the bounds of our coverage. However, that denial of coverage did not mean that the vehicle itself was an uninsured vehicle. In fact, it was an insured vehicle.

The Kansas courts have specifically held that this situation does not invoke UM or UIM coverage. In *Grimmett v. Burke*, 906 P.2d 156 (Kan.App.,1995), the court stated as follows:

> "Grimmett appears to argue that under K.S.A. 40-284, uninsured motorist coverage is available when the operator is uninsured even though the owner of the automobile is covered by a policy. Grimmett is wrong. "The majority view in this country, which we adopt in the present case, is that a vehicle of which either the owner or driver is covered by minimum insurance coverage is not 'uninsured' even though one of those persons has no insurance." *State Farm Mut. Auto. Ins. Co. v. Cummings*, 13 Kan.App.2d 630,634,778 P.2d 370, rev. denied 245 Km. 786 (1989)."

So, St. Paul Travelers is not denying that there is coverage for this vehicle. We have denied coverage for the driver who caused the accident. Kansas law recognizes this difference. For these reasons, we must deny your claim for UM benefits arising from the Nowak Construction policy.

Should you have any information that you believe would affect or change our determination, please bring it to my attention.

(Plf. Exh. 11) (emphasis in original).

To the date of the filed Petition in this matter (July 27, 2005), St. Paul had not made any offer to settle plaintiff's claims for uninsured motorist benefits, denied that Jack Nowak was negligent, stated that it was refusing to negotiate a settlement on the grounds that Jack Nowak was without culpability for the accident, stated that it was refusing to negotiate a settlement on the grounds that the Rhoten children had any fault in the accident or that they knew Jack Nowak was driving the truck without permission, or explicitly raised the "unauthorized use" exclusion.  The defenses at issue in this motion are set forth at paragraphs 2 and 3 under the Defenses section of Defendant's Amended Answer. Those paragraphs read as follows:

4

2. Plaintiffs are not entitled to UM coverage due to the "unauthorized use" exclusion in the policy. (Form 44029, page 4.) Jack Nowak was an unlicenced and under-aged driver, without parental permission for this "joyride" with 8 other teenagers.

3. Plaintiffs are not entitled to UM protection because the driver was not operating an uninsured vehicle. The vehicle in question was insured to the extent necessary under Kansas Law. (Form 44029, page 1.)

(Plf. Exh. 3.)

Plaintiff Natalie Long is a resident of Sedgwick County, Kansas. She is the natural mother of both Charles (C.J.) Rhoten, Jr. and Jennifer Rhoten; she also is the administrator of the estate of Charles Rhoten, Jr.  Nowak Construction Company is a Kansas for-profit corporation with its principal place of business in Sedgwick County, Kansas.

Plaintiff filed this action in state court contending that St. Paul is responsible for paying uninsured motorist benefits for C.J. Rhoten's injuries and death and Jennifer Rhoten's injuries. (Sedgwick County District Court, Case No. 05CV2882.)  St. Paul removed this action to this court.


**Conclusions of Law**

Plaintiff first moves to remand the present action, arguing that the case was improperly removed since all the parties are residents of Kansas.  Specifically, plaintiff argues that pursuant to 28 U.S.C. § 1332(c)(1), defendant St. Paul, which would otherwise be a resident of Minnesota, should be deemed a resident of the state where its insured lives, Kansas.

Under 28 U.S.C. § 1332(c)(1),

a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business.

The court will deny the motion to remand.  First, the present action is not a "direct action" within the meaning of § 1332(c), which contemplates an action by a tortfeasee against the insurer of the tortfeasor, without joining the tortfeasor. *See McGlinchey v. Hartford Acc. and Indemn. Co.*,

866 F.2d 651 (3rd Cir. 1989). Here, plaintiff is seeking to recover as the insured under the uninsured motorist coverage.

Second, the action also falls outside § 1332(c) because that statute only applies where there is an action seeking to recover under a liability policy. Here, plaintiff seeks to recover under an uninsured motorist provision, which is not liability coverage; it provides compensation in the absence of insurance by the responsible party, but it is not liability insurance. *Hernandez v. Travelers Ins. Co.* 489 F.2d 721, 725 (5th Cir. 1974). As a result, the narrow exception of 28 U.S.C. § 1332(c) is inapplicable, and defendant must be considered a resident of Minnesota. The present action was properly removed to federal court.

In her motion for summary judgment, plaintiff makes two arguments. First, she seeks a ruling that St. Paul cannot advance its defense that uninsured motorist coverage is not available because Jack Nowak was a non-permissive driver. Second, she seeks a determination that St. Paul's defense based on unreasonable use should be excluded, based both on the language of the policy and on estoppel. St. Paul argues that these defenses are appropriate, and further argues that summary judgment should not be considered at this stage of the litigation because discovery has not taken place.

The court first rejects the contention that summary judgment must await further discovery. St. Paul has failed to demonstrate how additional discovery into the circumstances of the accident would assist in resolving the narrow legal questions presented by plaintiff's motion, which focus solely on the duties arising from the insurance agreement itself. In its responsive pleading, St. Paul in the great majority of instances does not controvert the essential facts presented by plaintiff, and in the remainder fails to show how additional discovery would be relevant to the construction of the insurance contract.

The court also rejects plaintiff's argument that St. Paul should be estopped from relying on the use exclusion in the insurance agreement. First, plaintiff has failed to demonstrate that the elements of estoppel are present. Plaintiff has shown only that St. Paul did not previously advance

the use exclusion as a legal defense prior to this litigation; it has failed to show that St. Paul somehow induced her to believe any fact to her prejudice. *Geico General Ins. Co. v. Hanzlik*, 32 Kan.App.2d 951, 960 (2004). Second, even if the elements of estoppel were otherwise present, Kansas law prevents the use of the doctrine of estoppel to expand coverage under an insurance agreement beyond explicit exclusions. *Hillman v. Colonial Penn Ins. Co.,* 19 Kan. App.2d 375, 377, 869 P.2d 248 (1994).

The insurance agreement here provides as an express exclusion from coverage:

**Unauthorized use.** We won't cover a person who is injured while using an auto without having a reasonable belief that he or she is entitled to use it.

St. Paul argues the exclusion may be applicable if the evidence revealed by discovery shows that the Rhoeten children lacked a reasonable belief they were entitled to ride in the Nowak truck at the time of the accident. The plaintiff argues that the exclusion is inapplicable because "use" within the meaning of the agreement and Kansas law is restricted to persons driving a vehicle.

In support of her argument, plaintiff cites the ruling of the Kansas Supreme Court in *Colfax ex rel. Colfax v. Johnson*, 270 Kan. 7, 16, 11 P.3d 1171 (2000). In *Colfax*, the insurance agreement defined as an "insured" any person who was "using" the vehicle, and the issue before a non-occupant of the vehicle who allegedly gave negligent "all clear" direction to a driver could thus be considered a "user" and hence an "insured" under the policy. The *Colfax* court first noted that term "user" was not expressly defined in the agreement, and restated the basic standards with respect to the interpretation of an insurance agreement:

An insurance policy is construed to give effect to the intention of the parties. *Brumley v. Lee*, 265 Kan. 810, 812, 963 P.2d 1224 (1998). If the policy is not ambiguous, it is enforced as made, but if it is ambiguous, it is given the construction most favorable to the insured. 265 Kan. at 812-13, 963 P.2d 1224. The test to determine whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean. *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 261 Kan. 806, Syl. ¶ 2, 934 P.2d 65 (1997).

270 Kan. at 11, 11 P.3d at 1175.

The court then reviewed its earlier decision in *Dawson v. Griffin*, 249 Kan. 115, 816 P.2d 374 (1991), which involved an accident allegedly created by a negligent hand-signal by a third party to the defendant driver.   After reviewing *Dawson* and other cases from outside Kansas, the court ultimately reversed the decisions of the lower courts and held that the lookout was not a "user" of the vehicle within the meaning of the policy:

> The *Dawson* court determined that when a person takes physical control of a moving vehicle, even though for only an instant, that person has gained control over it and is operating it within the normal definition and understanding which ordinary laymen would give to an insurance policy. Following the rationale of *Dawson,* to constitute a "use" or to be a "user" under the policy, such as to be an insured, one must be operating the vehicle. McFarland was a lookout. She did not have physical control of the vehicle; therefore, she was not "using" the vehicle at the time of the accident. McFarland is not an "insured" under the Continental policy.

270 Kan. at 16, 11 P.3d at 1177.

*Colfax* therefore equates "use" of a vehicle with direct physical control over the operation of the vehicle.   St. Paul argues that this interpretation of "use" of a vehicle is that its definition of use "does not comport with other Kansas cases."  (Resp. at 15).   St. Paul cites *Ball v. Midwestern Ins. Co.*, 250 Kan. 738, 829 P.2d 897 (1992) and *Esfed Trucking v. Metropolitan Ins. Co.*, 193 Kan. 7, 10-11, 392 P.2d 107 (1964).

In *Ball*, the court was interpreting KSA 40-284(e)(1), which authorized an exclusion for injuries arising from "the regular use" of a family vehicle.   Citing *Esfed* and *Alliance Mut. Cas. v. Boston Ins.*, 196 Kan. 323, 327-28, 411 P.2d 616 (1966), the court agreed that "[i]n the context of motor vehicle insurance, this court has defined 'use' very broadly as including 'to occupy.'" 250 Kan. at 745, 829 P.2d at 902.   The court found that the family regular use exclusion applied to bar the claim of a passenger who was the infant daughter of the insured owners of the vehicle.   In Esfed, the court construed an indemnification agreement between two insurance carriers, and held that a semi-trailer truck which struck a bystander, being towed by an caterpillar tractor, did not fall within the agreement's authorization for indemnification in the event that the truck was being "used" by the operator of the tractor.   After noting the general definition of "use" in 91 C.J.S. "Use," 503, 518-19, as "to hold, occupy, enjoy, or take the benefit of," 193 Kan. at 11, 392 P.2d at 110, the court

ultimately concluded that no coverage was provided since the accident happened after further towing of the truck was unnecessary.

There is no question but that the term "use" has been interpreted in variant ways under Kansas law, but there is no need for the court to find, as plaintiff suggests, that the later *Colfax* decision "trumps" the earlier decisions. (Reply, at 12). Rather, the court finds that each case has turned on its own facts, with the term "use" being applied and considered in different situations. In *Esfed*, for example, the court was construing a contract between two insurance carriers, which, as the court noted, "should know the meaning of the words used in those policies." 193 Kan. at 10. Here, in contrast, St. Paul seeks to narrow the scope of its coverage based on a particular construction of the term "use" which is not spelled out in the policy of insurance. St. Paul carefully defined a host of other terms in the policy which it drafted; it did not attempt to define "use," even though the policy was put into place well after the decision in *Colfax* demonstrated that "use" may be defined to require physical operation of a vehicle. St. Paul could have broadly defined "use" for purposes of its "use exclusion," but it chose not to do so. The court will construe the policy in favor of coverage, *see United States Fidelity and Guaranty Co. v. Hokanson*, 2 Kan. App. 2d 580, 582, 584 P.2d 1264 (1978), and grants summary judgment in favor of plaintiff on the issue.

The remaining question before the court is whether St. Paul should be barred from raising the defense that there is no uninsured motorist coverage because Jack Nowak was a non-permissive driver of the vehicle. St. Paul bases this defense largely on the court's language in *Winner v. Ratzlaff*, 211 Kan. 59, 505 P.2d 606 (1973). In that case the court concluded KSA 40-284 authorized the direct action against an insurance carrier for uninsured motorist benefits. The court wrote that:

> the insured must be able to establish fault on the part of the uninsured motorist which gives rise to the damages and to prove the extent of those damages. This would mean that in a direct action against the insurer the insured has the burden of proving that the other motorist was uninsured, that the other motorist is legally liable for damage to the insured, and the amount of this liability. In resisting the claim the insurer would have available to it, in addition to policy defenses compatible with the statute, the substantive defenses that would have been available to the uninsured motorist such as contributory negligence, etc.

211 Kan. at 604 (citing Robert T. Cox, 'Uninsured Motorist Coverage,' 34 Mo.L.Rev. 1, 34).  St. Paul's reliance on this language from *Winner* — St. Paul emphasizes "the other motorist" in quoting this passage — carries little weight.  The court in that case was simply addressing both the typical situation involving uninsured motorists:  the typical two-car collision.  There is nothing in *Winner* to suggest that single vehicle accidents cannot form the basis for an uninsured motorist claim.

However, a stronger case is made out by the decision in *Hilyard v. Estate of Clearwater*, 240 Kan. 362, 729 P.2d 1195 (1986).  In *Hilyard*, the insurer's defense rested on the then-existing (but subsequently repealed) household exclusion contained in KSA 40-3107(i)(1).  The court held that minor children barred by the household exclusion could not recover under uninsured motorist coverage.  The court wrote:

> After a careful examination of K.S.A. 40-284 the uninsured motorist law, and K.S.A. 40-3107(i)(1), the authorization for the household exclusion clause, we conclude that neither [plaintiffs] are covered by the uninsured motorist provisions of the State Farm policies. K.S.A. 40-284 requires uninsured motorist liability coverage for the insured for injuries resulting from an accident arising out of the ownership, maintenance, or use of a motor vehicle by an "uninsured owner or operator." The statute does not contemplate a situation where the "uninsured owner or operator" is the owner of an automobile liability insurance policy.
>
> Further, we note that if we were to hold the uninsured motorist statute mandates coverage in this instance, we would effectively nullify the household exclusion clause. It is unfortunate that the accidents giving rise to the cases before us occurred during the relatively brief period of time during which household exclusion clauses were legislatively authorized by K.S.A. 40-3107(i)(1). However, mandatory automobile liability insurance is a creature of statute and the legislation authorizing household exclusion clauses is clear and unambiguous. Accordingly, it is not subject to judicial construction.

240 Kan. at 368, 729 P.2d at 1200.

The plaintiff, argues, however, that the decision in Hilyard was later limited in *State Farm Mut. Auto. Ins. Co. v. Cummings*, 13 Kan.App.2d 630, 778 P.2d 370 (1989), *abrogated on other gds.*, *Cashman ex rel. Cashman v. Cherry*, 270 Kan. 295, 13 P.3d 1265 (2000).  In *Cummings*, the court limited *Hilyard* to its facts and refused to rest its decision on the earlier case.  Still, the *Cummings* court did not effectively negate *Hilyard*, as plaintiff suggests.  Rather, its ultimate conclusion is similar to that of *Hilyard*.  The *Cummings* court wrote:  "The majority view in this

10

country, which we adopt in the present case, is that a vehicle of which *either* the owner *or* driver is covered by minimum insurance coverage is not 'uninsured' even though one of those persons has no insurance." 13 Kan.App.2d at 634 (emphasis added).  Here, the owner of the Nowak vehicle had the requisite minimum coverage.

Finally, there is additional support to be found in *Chance v. Farm Bureau Mut. Ins.*, 756 F.Supp. 1440 (D. Kan. 1991).  In that case, plaintiff injured by a co-worker sought to recover uninsured motorist benefits based on the argument that, since he was otherwise barred by the operation of the workers compensation statute from recovering against the co-worker, the co-worker was effectively an uninsured motorist.  Relying in part on *Hilyard* and *Cummings*, as well as decisions across the nation, the court found that the co-worker was not "uninsured" for purposes of recovery.  756 F.Supp. at 1440.

The court finds that Kansas law does not contemplate the requiring uninsured motorist coverage in cases such as that presented here.  Nor can the court accept plaintiff's argument (Motion, at 11), that the language of the policy nevertheless mandates coverage.  The Kansas Supreme Court's conclusion in *Hilyard* is applicable here, as is its concern that a contrary ruling would have the effect of eviscerating the underlying exclusion.  It is of no moment that the statutory authorization for the specific exclusion at issue in *Hilyard*, the household exclusion, has been repealed. The repeal was undertaken by the legislature.  Here, the non-permissive user exclusion is a standard policy exclusion, otherwise entirely permissible under the law.  Requiring coverage here would, as in the words of Hilyard, "effectively nullify" the exclusion.

Finally, the court rejects plaintiff's argument (Motion, at 11), that the language of the contract nevertheless mandates uninsured motorist coverage.  Rather, the plain language of the uninsured motorist policy provides coverage only for the actions of the driver of "an uninsured or underinsured vehicle."  By the ordinary meaning of the words used in the policy, the Nowak Construction truck was not an uninsured vehicle.  It was insured under a specific policy of insurance.

11

IT IS ACCORDINGLY ORDERED this 6th day of April, 2006, that the plaintiff's Motion to Remand (Dkt. No. 10) is denied; plaintiff's Motion for Summary Judgment (Dkt. No. 13) is granted in part and denied in part, as provided herein.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE